UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| TRAVIS EDLAND,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BASIN ELECTRIC POWER<br>COOPERATIVE,<br><br>　　　　Defendant. | 4:21-cv-04008-KES<br><br><br>**BASIN ELECTRIC POWER<br>COOPERATIVE'S MEMORANDUM<br>IN SUPPORT OF MOTION<br>TO DISMISS** |

Defendant Basin Electric Power Cooperative, by and through its counsel of record,

respectfully submits this Memorandum in Support of Motion to Dismiss.

## **INTRODUCTION**

Plaintiff Travis Edland ("Plaintiff" or "Edland") made two vile and vicious videos

and uploaded them to YouTube on or around July 11, 2020 ("Videos"). Based on the

threats of violence Edland made in the Videos against Basin employees and Basin's

CEO, Defendant Basin Electric Power Cooperative ("Basin") terminated Edland's

employment. It also recorded copies of the Videos to preserve evidence of the threats.

Basin then shared copies of the Videos with the Brookings County Sheriff's Office. On

July 14, 2020, the Sheriff's Office served Edland with a No Trespass Order, restraining

him from entering Basin's property. Edland has now filed this lawsuit against Basin,

alleging causes of action for copyright infringement, under the Copyright Act and state

common law, and violation of the Digital Millennium Copyright Act, all based on the

actions Basin took in July 2020, in response to Edland's threats of violence. Basin now moves to dismiss the Complaint by Edland for failure to state a claim under Federal Rule of Federal Procedure 12(b)(6).

## BACKGROUND

### I.    The Parties

Basin is a not-for-profit, consumer owned cooperative with 141 member-cooperative systems. While Basin's headquarters are in Bismarck, North Dakota, Basin has facilities throughout the upper Midwest, including four facilities in South Dakota. Basin's core business is generating and transmitting wholesale bulk electric power to over 3 million electric consumers, who are primarily located in nine states: Colorado, Iowa, Minnesota, Montana, Nebraska, New Mexico, North Dakota, South Dakota, and Wyoming.

The Plaintiff is a former employee of one of Basin's South Dakota facilities, Deer Creek Station. On or around July 11, 2020, Edland published two videos on YouTube, in which he made threats of physical violence against Basin employees and Basin's CEO. Fellow coworkers saw the videos and reported the content to their supervisor at Basin. Threats of violence directed at fellow employees are against Basin's employment policies. Edland, an at will employee, was terminated as a Basin employee on July 11, 2020, for making these threatening and inappropriate statements that he had recorded and published on YouTube. In addition, based on the content of the videos, on July 14, 2020, an Order of No Trespass from the Brookings County Sheriff's Office was served on Edland prohibiting Edland from entering Basin property. On July 22, 2020, Edland

initiated an action with the Occupational Safety and Health Administration ("OSHA"), alleging Basin's reasons for terminating his employment were discriminatory. On January 15, 2021, Edland filed this current action against Basin, which was served on Basin on February 10, 2021.

## II.    Plaintiff's Allegations

Edland alleges three causes of action against Basin: copyright infringement under the Lanham Act (Count I); Violation of the Digital Millennium Copyright Act (Count II); and common law copyright infringement (Count III). Edland seeks, among other relief, statutory and enhanced damages under the Copyright Act.  All of the claims are based on the actions Basin took in July 2020, when confronted with Edland posting the Videos in which he discusses threats of violence against Basin employees.

## ARGUMENT

## I.    Standard on a Motion to Dismiss

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *United States ex rel. Raynor v. Nat'l Rural Utils. Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court may consider on a Rule 12(b)(6) motion documents that are public records when they are submitted in support of a motion to dismiss. *Coeur D'Alene Tribe*, 164 F.3d 1102 at 1107.

## II.    Count I Should be Dismissed for Lack of a Valid Copyright Registration

The Copyright Act provides federal courts with original jurisdiction over any civil action arising under federal copyright law. 28 U.S.C. § 1338(a). Pursuant to the Copyright Act, a valid copyright registration is a precondition to filing a copyright infringement action. 17 U.S.C. § 411(a); *see also Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1349 (8th Cir. 1994) (noting section 411 of Copyright Act requires registration in order to bring suit for infringement). Accordingly, the requirement for a valid registration acts as a jurisdictional prerequisite to an infringement suit. *Prospect Planet, L.L.C. v. Paychecks for Life.com*, No. A3-02-91, 2003 U.S. Dist. LEXIS 835, at *5 (D.N.D. Jan. 16, 2003) (citing *Olan Mills*, 23 F.3d at 1349).

The Copyright Act provides that a certificate of copyright registration constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). That presumption, however, is rebuttable. *Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1042 (8th Cir. 2003). For example, if a certificate of registration contains inaccurate information that "if known, would have caused the Register of Copyrights to refuse registration, the registration is invalid." 17 U.S.C. § 411(b)(1). While non-material inaccuracies, absent a showing of fraud, can be corrected by the owner obtaining a supplementary registration that corrects the

inaccuracies, when a published work has been registered inaccurately as an unpublished work, the error is such that the registration is not correctable with a supplementary registration and is invalid. *See United States Copyright Office, Compendium of Office Practices III* § 904(5) ("Where the applicant seeks registration as an unpublished work and provides the Office with a statement of facts which clearly show that publication has occurred, the Office will not register a claim to copyright in the work as unpublished.") ("Compendium III").[1] The Copyright Office's justification for this policy is that:

> these types of publication issues cannot be corrected with a supplementary registration because the deposit requirement for a published work and an unpublished work are not the same. As a general rule, the applicant must submit two complete copies of the best edition if the work has been published, but only one complete copy is required for an unpublished work. By contrast, if an unpublished work was erroneously registered as a published work, the date of publication may be corrected with a supplementary registration, because the deposit copies for a published work usually satisfy the deposit requirement for an unpublished work.

Compendium III § 1802.7(C) (citations omitted); *see also U.S. Copyright Office, Copyright Circular 8*, at 1 (2013) ("A supplementary registration is not appropriate if the work was registered as unpublished when it was actually published at the time of registration."). Section 1802.7(C) of the Copyright Office's Compendium III further provides:

> Publication Issues: If the work was unpublished when the application for the basic registration was submitted to the U.S. Copyright Office and then published sometime thereafter, the date of publication cannot be added to the registration record with a supplementary registration. **Instead, the applicant should submit a new application for a new basic registration**

---

[1] *See Asche & Spencer Music, Inc. v. Principato-Young Entm't, Inc*., 147 F. Supp. 3d 833, 836-37 (D. Minn. 2015) (explaining that the court owes deference to the opinions and judgments of the Copyright Office).

> **for the first published edition of that work** (even if the published version "is substantially the same as the unpublished version").

Compendium III § 1802.7(C) (emphasis added). In sum, correct classification of a work as published or unpublished is a material fact. Publication means when one or more copies of a work are distributed to the public by or with the authority of the copyright owner. Compendium III § 1905.1; *see also* § 808.10(l)(1) ("Distribution to the Public: A motion picture is distributed to the public when . . . film prints, videotapes, DVDs, or other formats are distributed to theaters, schools, or other organizations.").

Edland alleges the Court has jurisdiction pursuant to the Copyright Act. (Doc. 1 at ¶ 6). In support of his federal copyright claim, Edland asserts he has a federal registration for the two videos and refers to registration number PAu004055591. (Doc. 1 at ¶ 4). A copy of the record from the Copyright Office website shows the Videos were registered **as unpublished works** on December 16, 2020. Ex. 1.[2] Edland admits, however, to posting (publishing) the Videos on YouTube on or about July 11, 2020. Doc. 1 at 3.

---

[2] Basin respectfully requests the Court take judicial notice of the record from the Copyright Office (Ex. 1); Edland's OSHA Complaint (Ex. 2); and Basin's Response in the OSHA proceeding, including Attachment 5 (the links to the Videos), Attachment 8 (official communication from Deputy Jeremy Kriese confirming review of videos and service of the No Trespass Order); and Attachment 9 (a copy of Service of No Tress Pass Order) (Ex.3). *See* FRE 201 (The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). The Court's consideration of these records is allowed in ruling on a Rule 12(b)(6) motion. *See Missouri v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999) (the court may also consider on a Rule 12(b)(6) motion documents that are public records when they are submitted in support of or opposition to a motion to dismiss).

Edland also admits the users of YouTube are "the public who watches streaming videos." Doc. 1 at ¶ 16. Thus, posting a video to YouTube, where it can be viewed by the public without restriction, is publication of a work. Yet, Edland told the Copyright Office in his application, that the Videos were unpublished and the issued registration was for unpublished works. Further, Edland should have known the information he provided to the Copyright Office was inaccurate. *See* Compendium III §212.1 ("Material Misrepresentations: Knowingly making a false representation of a material fact in an application for copyright registration, or in any written statement filed in connection with the application, is a crime that is punishable under 17 U.S.C. § 506(e).").

Because Registration No. PAu00405591 is for an unpublished work, and Edland alleges Basin copied videos posted to YouTube, published works, Registration No. PAu00405591 is invalid. Since Edland lacks a valid copyright registration, Count I should be dismissed for failure to state a cause of action, as Edland did not meet the Copyright Act prerequisite for filing a lawsuit.

## III.    Count I of the Complaint Should be Dismissed for Failure to State a Claim of Infringement

On July 14, 2020, three days after the Videos were posted on YouTube, Edland was served with an Order for No Trespass. Ex. 3; Attachments 8 & 9. On July 15, 2020, Edland initiated the action with OSHA, alleging Basin's reasons for terminating his employment were discriminatory. Ex. 2. In the OSHA complaint, Edland refers to a few YouTube videos he made for purportedly "discussing his concerns." *Id*. On January 15, 2021, Edland filed this current action against Basin.

Edland describes the Videos referenced in his Complaint for this action as "advocating for a COVID-19-safe working environment" and for "adoption of CDC-recommended protection for Edland and his coworkers." Doc. 1 at ¶11. Edland further alleges that his employment was terminated based on the language and commentary of the Videos. Doc. 1 at ¶12. Edland also asserts that Basin has admitted the video was recorded. Edland fails to explain, however, who viewed the videos, to whom the videos were distributed, and on what factual basis he claims Basin admitted to recording the Videos. Edland fails to provide those facts in his Complaint, because to do so would show that his infringement claim is baseless.

As can be seen from the OSHA filings, Basin submitted the Videos in response to Edland's OSHA complaint. Ex. 3 (Basin August 7, 2020 Response ("Response"). In the Response, Basin notes the submission of the Videos: "See attachment 5 for link to YouTube videos made by Mr. Edland." Response at 4 and Attachment 5.

Basin also submitted a copy of the Videos to the Brookings County Sherriff's Office in support of an order for no trespass. Ex. 3 at Attachment 8. (Deputy Kriese email). The Order of No Trespass was served on Edland. *Id*.; *id.* at Attachment 9. In addition, Deputy Kriese provided the Videos to the Brookings County State's Attorney for possible criminal charges. *Id*. at Attachment 8.

 The purpose of copyright law is "to Promote the Progress of Science and useful Arts." U.S. Const. art. I, § 8, cl. 8. The rights associated with a valid copyright is subject to a list of important statutory exceptions. One such exception is the fair use defense found at 17 U.S.C. § 107, which states that "the fair use of a copyrighted work . . . is not

an infringement of copyright." 17 U.S.C. § 107. Although now codified in the Copyright Act, the fair use doctrine is a longstanding common-law principle that predates codification. In essence, the fair use defense allows individuals other than the copyright owner to use the copyrighted material in a reasonable manner without the owner's consent. *See Harper & Row Publishers, Inc. v. Nation Enter's*, 471 U.S. 539, 549 (1985).

> Although the case law eschews bright lines in the application of the fair use defense, the statute lists the following four factors to guide a court's analysis in determining whether an alleged infringing use is a fair use:
> (1) the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for the copyrighted work.

3 NIMMER ON COPYRIGHT § 13.05[D][2] (citing 17 U.S.C. § 107).

### 1. The Purpose and Character of Basin's Use of the Videos Does Not Supersede the Original Purpose of the Videos.

The first fair use factor for the Court to consider is the "purpose and character of the use, including whether such use is of a commercial nature." 17 U.S.C §107(1). The main inquiry is whether the new work supersedes the purpose of the original or adds something new. *Harper & Row*, 471 U.S. at 562. The use of copyrighted material for commercial profit weighs against a finding of fair use. *Id*. at 539.

Edland asserts the Videos were posted on YouTube to advocate "for a COVID-19 safe working environment." Doc. 1 at ¶ 12. Edland referred to the Videos in his complaint that initiated the OSHA proceeding, claiming no names were mentioned in the Videos. Ex. 2. Edland alleges in his federal Complaint that Basin claims the Videos were

the basis for his termination of employment. Doc. 1 at ¶ 12. As shown in the OSHA

proceeding documents, the Videos were used by Basin in response to Edland's assertions

in the OSHA complaint. Ex. 3. The Videos were also shared with the Sheriff's Office as

evidence to support the Order for No Trespass. Ex. 3. The purpose and character of

Basin's use in supplying the Videos to law enforcement was to preserve and provide

evidence of what Basin and Basin employees viewed as threatening behavior by Edland.

The House Committee on the Judiciary explicitly listed "reproduction of a work in

legislative or judicial proceedings or reports" as an example of a fair use. H.R. Rep. No.

94-1476, 65 (1976). For example, in *Jartech, Inc. v. Clancy,* copying of allegedly

obscene film to be used as evidence in a nuisance abatement action was found to be fair

use. 666 F.2d 403, 406-07 (9th Cir. 1982). In *Bond v. Blum*, the court found that "the

narrow purpose of defendants' use of the manuscript . . . for the evidentiary value, was

non-commercial and not for the purposes of exploiting the plaintiff's work, weighed in

favor of fair use. 317 F.3d 385, 395 (4th Cir. 2003) (finding fair use and noting the "sole

purpose and intent of introducing plaintiff's manuscript was to obtain admissions of fact

against his interest in an effort to prove that his home would not be a suitable place for

custody of children."). *See also Hollander v. Steinberg*, 419 Fed.Appx. 44, 47 (2d Cir.

2011) ("[T]he district court . . . correctly determined that [the defendant's] use of [the

plaintiff's] essays [in judicial proceedings] was a fair use."); *Healthcare Advocates, Inc.

v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 636-37, 642 (E.D. Pa. 2007)

(finding that the defendants' archiving and printing screenshots from the plaintiff's

webpage for supporting documentation in a separate lawsuit constituted fair use).

Basin's use of the Videos did not supersede Edland's purpose of posting the Videos on YouTube. Accordingly, this factor weighs heavily towards a finding of fair use.

### 2.      The Nature of the Videos is Factual.

This factor focuses attention on the extent to which a work falls at the core of creative expression. *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 586 (1994). For example, a fictional work might be closer to the core of copyright than a factual work. *See, e.g., Stewart v. Abend,* 495 U.S. 207, 237-38 (1990). Edland alleges the Videos are informational in nature, advocating for a safe working environment. *Healthcare Advocates*, 497 F. Supp. 2d at 638 (noting works that are predominately informational weigh towards fair use). Doc. 1 at ¶ 12. This factor weighs in Basin's favor.

### 3.      The Amount and Substantiality of the Portion Used was Justifiable.

The third factor that must be considered is the amount and substantiality of the portion of the copyrighted work used. Where the alleged infringer has a legitimate purpose behind the copying, and that purpose is substantially different than the original use of the copied work, the quantity of material copied is irrelevant. *See Campbell*, 510 U.S. at 594. This is not a quantitative determination, but rather a qualitative one. *See Harper & Row*, 471 U.S. at 564-65. "Several cases confirm and illustrate this principle by holding that the copying of a copyrighted work in its entirety for use or submission in a judicial proceeding constitutes fair use, not infringement." *Devil's Advocate, LLC v. Zurich Am. Ins. Co*., No. 1:13-cv-1246, 2014 U.S. Dist. LEXIS 174309, at *9 (E.D. Va. Dec. 16, 2014) (listing cases). NIMMER ON COPYRIGHT also notes that copying of a

copyrighted work in its entirety for use or submission in a judicial proceeding constitutes fair use, not infringement. *See* 3 NIMMER ON COPYRIGHT § 13.05[D] at 13-91 (1991) ("works are customarily reproduced in various types of judicial proceedings, including obscenity and defamation actions . . . and it seems inconceivable that any court would hold such reproduction to constitute infringement either by the government or by the individual parties responsible for offering the work in evidence").

In *Healthcare Advocates*, the plaintiff alleged that the defendant law firm, that had been opposing counsel in a trademark infringement action brought by the plaintiff, committed copyright infringement when, in defending its client, attorneys at the firm copied archived pages of plaintiff's website during discovery in the trademark action. *Healthcare Advocates*, 497 F. Supp. 2d at 633. The court stated that "[t]he question is whether the [law] firm copied more than was necessary and justifiable under the fair use doctrine. *Id*. at 638. The court concluded that even though the law firm had copied everything, the amount of copying weighed towards fair use since (1) the firm had an obligation to preserve evidence and (2) the webpages provided evidence that was necessary to defend the firm's client. *Id*.

While Edland's allegations merely summarily claim that Basin improperly copied, viewed and distributed the Videos, the filings from the OSHA proceeding and the Sheriff's Office demonstrate Basin's use of the Videos was for the purposes of preserving evidence of inappropriate and terminable behavior of one of its employees, and more importantly, to preserve and provide evidence to law enforcement of threatening behavior towards Basin employees. *See* Ex. 3.  A complete copy of the Videos was necessary for

Basin to preserve the evidence for future litigation and law enforcement activities. In addition, a complete copy of the Videos is necessary for the factfinder to determine the level of threat Edland posed to Basin employees. Accordingly, this third factor weighs towards fair use.

### 4. Basin's Use of The Videos Had No Effect on The Potential Market for The Videos.

Finally, the Court must consider the effect of Basin's use of the Videos on the potential market for the value of the Videos. This factor is "undoubtedly the single most important element of fair use." *Bond v. Blum*, 317 F.3d 385, 396 (4th Cir. 2003) (quoting *Harper & Row*, 471 U.S. at 566). This is so because it touches most closely upon the author's ability to capture the fruits of his labor and hence his incentive to create. *Id*. "'[A] use that has no demonstrable effect upon the market for, or the value of, the copyrighted work need not be prohibited in order to protect the author's incentive to create.' Therefore, 'fair use, when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied.'" *Hustler Magazine, Inc. v. Moral Majority, Inc*., 796 F.2d 1148, 1155 (9th Cir. 1986) (citations omitted). Edland admits that the Videos are no longer available on YouTube. Doc. 1 at ¶ 14. Edland makes no allegations of monetary damages caused by Basin's use of the Videos. The Complaint contains no allegations that Edland or Basin made commercial use of the Videos. Because Basin's use of the Videos has no demonstrable effect upon the market for, or the value of, the Videos, this factor also weighs towards fair use.

Basin's use of the Videos in law enforcement activity and in defense of OSHA claims is fair use under 17 U.S.C. § 107, and not an infringement of copyright. Accordingly, the Court should dismiss Court I for copyright infringement as Edland has failed to state a claim for which relief can be granted.

## IV.    Edland Fails to State a Claim for Statutory Damages and Attorney Fees Under the Copyright Act

Even if the Court declines to dismiss Edland's copyright infringement cause of action, the Court should dismiss Edland's claims for the relief he seeks under the Act, statutory damages and attorney fees, as the allegations in the Complaint fail to support such a claim.

Section 504(c) of the Copyright Act provides for the award of statutory fees on a showing of copyright infringement. 17 U.S.C. § 504(c)(1)-(3). Further, section 505 of the Copyright Act provides the court may also award costs and a reasonable attorney's fee to the prevailing party. *Id*. § 505. Section 412 of the Copyright Act, however, provides an exception to the award of statutory damages and attorney fees under sections 504 and 505:

> In any action under this title, other than an action brought for a violation of the rights of the author under section 106A(a), an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(c), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—
>
> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or

(2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

*Id*. § 412 (emphasis added).

According to the Compendium III, the online public record contains a registration number and an effective date of registration. Compendium III § 209. "The 'effective date of registration' is the date on which the Office received an acceptable application, complete deposit copy(ies), and the proper filing fee." *Id*. (citing 17 U.S.C. § 410(d)).

"As well summarized in *Feldhacker v. Giovanti Homes*, 173 F. Supp. 3d 828 (S.D. Iowa 2016), courts in the Eighth Circuit have dismissed claims for statutory damages and attorney's fees under Section 412 where the alleged infringement commenced before, and continued after, the copyright registration. *Heritage Homes, LLC v. Benjamin Custom Homes, LLC*, No. 3:18-cv-271, 2019 U.S. Dist. LEXIS 173381, at *11 (D.N.D. Oct. 7, 2019) (dismissing with prejudice plaintiff's claim for statutory damages and attorney's fees under Section 505).

While Edland does not provide the effective registration date for registration number PAu004055591, as shown by the screen capture of the information at the Copyright Office with respect to registration number PAu004055591, the effective date of registration is December 16, 2020. Ex. 1. Edland alleges the infringing activity by Basin occurred in July 2020. Even in construing facts in a light most favorable to Edland,

15

there is insufficient support for a claim of statutory damages or attorney fees under the

Copyright Act and therefore, Edland's claims for such an award should be dismissed.[3]

## V.    Recording a YouTube Video with a Cell Phone does not Violate DMCA Section 1201(a)(1)(A).

Importantly, the DMCA creates liability for the act of circumvention, and not for

copying. *See Chamberlain Group, Inc. v. Skylink Technologies, Inc*., 381 F.3d 1178,

1193 (Fed. Cir. 2004). DMCA Section 1201(a)(1)(A) provides that "no person shall

circumvent a technological measure that effectively controls access to a work protected

under this title." To successfully establish a violation of § 1201(a)(1), Edland must

demonstrate (1) that Basin's alleged actions constitute circumvention, and (2) that the

circumvention was of an effective technological measure. Circumvention is defined in the

statute as any act to "avoid, bypass, remove, deactivate, or impair a technological

measure, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A). The

measures put in place must be "technological measures that effectively control access to a

work." 17 U.S.C. §1201(a)(1). A measure effectively controls access to a work "if the

measure, in the ordinary course of its operation, requires the application of information,

or a process or a treatment, with the authority of the copyright owner, **to gain access to**

**the work**." *Id.* § 1201(a)(3)(B) (emphasis added). In other words, a "technological

measure" under the DMCA, must be one that controls access, and not the ability to copy,

---

[3] "The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). Significantly, Edland has not pled actual damages nor that Basin has made commercial use of the Videos, which Basin has not.

record, or distribute copyrighted material. Furthermore, a technological measure, in order to be effective, must prevent **all forms of access to a work**. *See U.S.A. v. Crippen*, No. CR 09-703 PSG, 2010 U.S. Dist. LEXIS 143583, at *8 (C.D. Cal. Nov. 23, 2010) ("In fact, circumventing any technological measure that might protect a copyright interest cannot be a per se violation of § 1201(a)(1)(A), unless § 1201(a)(1)(A) is to attach criminal or civil liability to the burglar who disables a home security system protecting a house with copyrighted books, music and movies."); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 547 (6th Cir. 2004) ("Just as one would not say that a lock on the back door of a house 'controls access' to a house whose front door does not contain a lock . . . it does not make sense to say that [§ 1201(a)] of the DMCA applies to otherwise-readily-accessible copyrighted works."); Theresa M. Troupson, *Yes, It's Illegal to Cheat a Paywall: Access Rights and the DMCA's Anticircumvention Provision*, 90 N.Y.U. L. Rev. 325, 339 (2015) ("[A] technological protection measure must serve as a gatekeeper for all access; after all, a locked back door can hardly be said to effectively control access to a house if its front door is wide open."); *see also Couponcabin LLC v. Sav.com, Inc*., No. 2:14-CV-39-TLS, 2016 U.S. Dist. LEXIS 74369, at *18 (N.D. Ind. June 8, 2016) (dismissing plaintiff's DMCA claim, noting: "Absent allegations that a user of the Plaintiff's website is required to apply 'information or a process or treatment' to gain access (e.g., by providing a password), the Court is not convinced that the DMCA covers the alleged conduct at issue."). "[T]he DMCA targets the **circumvention** of digital walls guarding copyrighted material . . . but does not concern itself with the use of those

materials after circumvention has occurred." *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 443 (2d Cir. 2001) (emphasis in original).

In support of Court II, Edland alleges that YouTube has "many technological protection measures ("TPM") to prevent unauthorized copying, recording, and distribution of video content." Doc. 1 at ¶15. Edland does not allege or identify even one YouTube technological measure that prevents access to YouTube videos, generally or Edland's Videos, specifically. Indeed, Edland alleges that YouTube users are "the public who watch streaming videos." Doc. 1 at ¶16. Thus, the TPM that Edland refers to that allegedly prevent the copying or recording of videos, are not the "technological measures that effectively control access to a work" that must be in place and alleged to have been circumvented by a defendant to support an assertion of a DMCA violation under Section 1201(a)(1)(A). Edland further alleges that YouTube's "terms of service" forbids users from screen-capturing, recording, downloading, or otherwise copying videos posted and streaming on YouTube. Doc. 1 at ¶16. An alleged violation of a services agreement, however, is not sufficient to show circumvention of technological measures that effectively control access under the DMCA.

In sum, even if taken as true, Edland's allegations do not support a cause of action under DMCA Section 1201(a)(1)(A) and therefore, count II of Edland's Complaint should be dismissed.

## VI.    Edland's Common Law Copyright Claim is Preempted by the Copyright Act.[4]

Edland brings as his final claim a claim of copyright infringement under common law. A cause of action for common law copyright infringement is preempted by The Copyright Act of 1976 and should be dismissed.

"The Copyright Act provides the exclusive source of protection for 'all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 of the Copyright Act.'" *National Car Rental Sys., Inc. v. Computer Associates Int'l, Inc.,* 991 F.2d 426, 428 (8th Cir. 1993) (quoting 17 U.S.C. § 301). A state-law cause of action is preempted if the work at issue lies within the subject matter of the Copyright Act, as defined by §§ 102 and 103, and the state-law right is equivalent to any of the exclusive rights within the general scope of copyright as defined in § 106. *Id.*; *see also Pinnacle Pizza Co. v. Little Caesar Enters*., 395 F. Supp. 2d 891, 899 (D.S.D. 2005) (dismissing state-law claims alleging conversion and misappropriation based on preemption of Copyright Act). "[N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State. 17 USCS § 301(a). "Section 301 is intended to create a uniform method of enforcing and protecting intellectual property rights by preempting state law claims."

---

[4] After Basin threatened to file a motion for sanctions based on Edland's frivolous lawsuit, counsel for Edland agreed to dismiss Count III, but stated Edland was maintaining the right to reassert a common law copyright claim at a later date. *See* Ex. 4 (January 29, 2021 Letter from Peterson).  Despite this concession, the original complaint that included Count III was served on Basin on February 10, 2021, twelve days after counsel's email agreeing to the dismissal of Count III.  The claim has not yet been dismissed and therefore, out of an abundance of caution, Basin has chosen to include Court III in this motion to dismiss.

*Pinnacle Pizza*, 395 F. Supp. 2d at 900 (citing *Daboub v. Gibbons*, 42 F.3d 285, 288 (5th Cir. 1995)). The Copyright Act "has preempted all common law copyright protection that is equivalent to the protection granted by the Act." *Dodd v. Fort Smith Special Sch. Dist. No. 100*, 666 F. Supp. 1278, 1282 (W.D. Ark. 1987). In *Dodd*, the court noted that "[a]n examination of the Copyright Act reveals that it was the intent of Congress to do away with the dual system of copyright that existed under the old act. Under the Copyright Act of 1976 protection is extended to unpublished works. Fixation is now the trigger mechanism which terminates common law copyright and activates federal statutory copyright." *Id*. at 1283. The court further noted that at the time of the adoption of the Copyright Act of 1976, registration was made a jurisdictional prerequisite to an infringement action in federal court and it would be improper to allow a plaintiff to bypass that registration requirement by asserting a cause of action encompassed by the Copyright Act. *Id*.

Edland bases his claim for common law copyright infringement on the same set of allegations as his claim for copyright infringement under The Copyright Act. Doc. 1 at ¶¶ 43-46. The rights afforded a copyright owner under state common law are equivalent to any of the exclusive rights within the general scope of the Copyright Act and have been preempted by the Copyright Act. Accordingly, Edland's claim for common law copyright infringement should be dismissed.

## VII.    Basin Should be Awarded Its Attorney Fees.

If the Court grants Basin's motion to dismiss at least with respect to Edland's copyright infringement claim, Basin should be awarded its costs and attorney's fees. Section 505 of the Copyright Act authorizes a court, "in its discretion," to order a copyright litigant to pay an adversary's court costs, and to award a "reasonable attorney's fee" to a "prevailing party." 17 U.S.C. § 505. The decision to award attorney fees to a prevailing party under § 505 is a matter for the district court's "equitable discretion," to be exercised in an evenhanded manner by considering factors such as whether the lawsuit was frivolous or unreasonable, the losing litigant's motivations, the need in a particular case to compensate or deter, and the purposes of the Copyright Act. *Action Tapes, Inc. v. Mattson*, 462 F.3d 1010, 1014 (8th Cir. 2006).

Edland brought this complaint alleging federal copyright infringement, violation of the DMCA anti-circumventions section, and common law copyright infringement seemingly in retaliation for his termination by Basin. Even a cursory review of the law would have shown Edland his claims have no merit. Indeed, Basin provided an explanation to Edland that his claims were frivolous and contrary to the law. Regardless, Edland continued to pursue this baseless lawsuit, causing Basin to expend resources to defend itself and bring this motion to dismiss.

The very purpose of Section 505 is to deter such frivolous and unreasonable lawsuits. Accordingly, Basin seeks its cost and reasonable attorney's fee. Basin will submit to the Court at its request a declaration regarding such fees and costs.

## CONCLUSION

For the foregoing reason, Basin respectfully requests the Court dismiss Edland's

Complaint in its entirely and award Basin its costs and attorney fees.

Dated March 2, 2021.

LYNN, JACKSON, SHULTZ & LEBRUN, P.C.


*/s/ Dana Van Beek Palmer*
Dana Van Beek Palmer
Michael L. Luce
110 N. Minnesota Ave., Ste. 400
Sioux Falls, SD  57104
Telephone: (605) 332-5999
E-mails: dpalmer@lynnjackson.com
             mluce@lynnjackson.com

and

Ruth Rivard (MN#327591) (*admitted PHV*)
Stinson LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN  55402
Telephone: (612) 335-1500
Email: ruth.rivard@stinson.com

*Attorneys for Basin Electric Power Cooperative*