UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| TRAVIS EDLAND,<br><br>      Plaintiff,<br><br>vs.<br><br>BASIN ELECTRIC POWER<br>COOPERATIVE,<br><br>      Defendant. | 4:21-CIV-04008-KES<br><br>**PLAINTIFF'S BRIEF IN OPPOSITION<br>TO DEFENDANT'S MOTION TO<br>DISMISS** |

Plaintiff, Travis Edland, respectfully submits this Brief in Opposition to Defendant's Motion to Dismiss (Docket 10). Defendant's motion relies heavily on matters outside the pleadings that should not be considered at this stage without converting the motion into one for summary judgment. If the Court considers matters outside the pleadings and converts the motion to one for summary judgment, the motion must be denied because it is both procedurally improper and premature. Finally, even if the Court considers the merits of Defendant's motion, Plaintiff's Complaint sufficiently states claims for relief to survive a motion to dismiss. Thus, Defendant's motion should be denied.

## FACTUAL BACKGROUND[1]

Plaintiff was employed by Defendant for many years prior to July 11, 2020, when Defendant terminated Plaintiff's employment. Docket 1 at ¶¶ 8-9. Plaintiff operates his own

---

[1] On a motion to dismiss, courts must accept the plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor, but need not accept a plaintiff's legal conclusions. *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). As explained *infra*, although Defendant's motion is more properly viewed as one for summary judgment, there has been no discovery initiated in this matter. Thus, the following facts are only those facts as properly set forth in Plaintiff's Complaint (Docket 1).

YouTube channel and has posted a number of videos to his channel, videos primarily related to Plaintiff's experience with coyotes. *Id.* at ¶ 10. Prior to July 11, 2020, Plaintiff also posted YouTube videos to his channel in which he advocated for a COVID-19 safe working environment at Defendant's power plant where Plaintiff was employed. *Id.* at ¶ 11. On July 11, 2020, Plaintiff posted two videos to his channel that again advocated for a COVID-19 safe working environment at Defendant's power plant. *Id.* at ¶ 12. The commentary in Plaintiff's two YouTube videos allegedly caused Defendant to terminate his employment. *Id.*

Prior to Plaintiff removing the two videos from his YouTube channel that day, Defendant used a cellphone to record both videos without Plaintiff's authorization. *Id.* at ¶¶ 13-14, 17. YouTube, however, has many technological protection measures ("TPMs") in place to prevent the unauthorized copying, recording, and distribution of videos posted to YouTube by creators like Plaintiff. *Id* at ¶ 15. Further, YouTube's Terms of Service for individuals who view videos on its platform forbids users from screen-capturing, recording, downloading, or otherwise copying videos posted on YouTube. *Id.* at ¶ 16. Defendant's use of a cellphone therefore circumvented YouTube's TPMs in violation of YouTube's Terms of Service, and without the authorization from Plaintiff who is the copyright owner of both videos. *Id.* at ¶ 17.

Plaintiff did not authorize Defendant to copy and retain permanent downloads of his two videos or circumvent YouTube's TPMs, technology upon which Plaintiff relied to protect the copyright of his videos. *Id.* at ¶ 20. Defendant admits it recorded the videos without the permission or authorization of Plaintiff, the copyright owner. *Id.* at ¶ 18. Absent Defendant's circumvention of YouTube's TPMs, Defendant would not have been able to obtain permanent downloads of Plaintiff's videos without Plaintiff's authorization. *Id.* at ¶ 19. After recording Plaintiff's videos, Defendant made copies, distributed such copies, and otherwise used,

2

reproduced performed (by playing), and viewed Plaintiff's two videos without Plaintiff's authorization, all in direct violation of Plaintiff's various rights. *Id.* at ¶ 21.

Plaintiff was and remains the exclusive owner of all copyrights associated with both YouTube videos from the moment he created and recorded them. *Id.* at ¶ 23. Plaintiff's copyrights associated with both videos are properly registered with the United States Copyright Office.  *Id.* at ¶ 24. Defendant willfully infringed on Plaintiff's copyrights when Defendant reproduced, distributed, performed (by playing), viewed, displayed, and performed (by means of digital audio transmission) his copyrighted work, all in violation of the Copyright Act. *Id.* at ¶¶ 23-34. Defendant's circumvention of YouTube's TPMs that control unauthorized access or copying of Plaintiff's copyrighted videos also violated the Digital Millennium Copyright Act ("DMCA"). *Id.* at ¶¶ 37-42.

## **LEGAL STANDARD**

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint are assumed true and construed in favor of the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

3

The court determines plausibility by considering the materials in the pleadings, by drawing on experience and common sense, and by viewing the plaintiff's claim as a whole. *See Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012). Inferences are construed in favor of the nonmoving party. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009). And "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," the plaintiff must provide "more than labels and conclusions[.]" *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss for failure to state a claim the complaint must contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2); *see also Al-Saadoon v. Barr*, 973 F.3d 794, 804 (8th Cir. 2020) (internal quotation omitted).

## DISCUSSION

## I.    Defendant's Motion to Dismiss Improperly Relies upon Matters Outside the Pleadings that Should Not Be Considered at the Motion to Dismiss Stage.

### A.    The Court Should Exclude Defendant's Extraneous Documents.

Defendant's motion is styled as one made under Federal Rule of Civil Procedure 12(b)(6). *See* Docket 10 at 1. However, Defendant's motion extensively relies on documents outside of the pleadings to make its arguments. *See id.* "[T]he [Rule 12(b)(6)] motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1356 (3d ed. 2015) Rather, "[s]pecific facts are not necessary [at the motion to dismiss stage]; the [Complaint] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

Because the court assumes that the factual allegations in the complaint are true when considering a motion to dismiss, "[c]ourts ordinarily do not consider matters outside the pleadings" at this stage. *Dunnigan v. Fed. Home Loan Mortg. Corp.*, 184 F. Supp. 3d 726, 735-35 (D. Minn. Apr. 27, 2016) (refusing to consider documents offered by defendants that were outside the complaint). Exceptions to this rule are narrow. *Id.* The court should not consider material outside the pleadings unless the materials "are necessarily embraced by the pleadings and exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)); *see also* 5B Wright & Miller, *Federal Practice & Procedure* § 1357. In general, materials necessarily embraced by the pleadings include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (internal quotation omitted).

"If 'matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56." *See* Fed. R. Civ. P. 12(d). The Eighth Circuit Court of Appeals has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy. *See Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979). A motion to dismiss must then be distinguished from a motion for summary judgment, "which goes to the merits of the claim—indeed, to its very existence— and is designed to test whether there is a genuine issue of material fact." 5B Wright & Miller, *Federal Practice & Procedure* § 1356. On a motion for summary judgment, the court must draw all reasonable inferences and consider the evidence in the light most favorable to the non-moving party. *See Matsushita Elec.*

5

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of demonstrating "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Here, the only pleading on file is Plaintiff's Complaint (Docket 1). The Court should not consider any material outside of Plaintiff's Complaint unless such material is "necessarily embraced by the pleadings and exhibits attached to the complaint." *See Pourus Media Corp.*, 186 F.3d at 1079. Defendant has attached to its motion to dismiss four exhibits, including Exhibit 2, a copy of an OSHA complaint filed by Plaintiff on July 22, 2020, and Exhibit 3, a letter submitted to OSHA by Defendant on August 7, 2020 in response to Plaintiff's OSHA complaint. Dockets 12-2 and 12-3.[2] Neither of these exhibits is attached to or necessarily embraced by Plaintiff's Complaint, for the allegations in Plaintiff's Complaint concern the infringement and circumvention of Plaintiff's copyright. *See* Docket 1. The Complaint focuses on Defendant's circumvention and infringement (on July 11, 2020, and potentially thereafter), not the OSHA investigation occurring in the following weeks. *See id.* Even if there are additional copyright or DMCA violations beyond the initial unauthorized recording of Plaintiff's videos (which activity will be revealed during discovery), the Complaint does not mention, reference, embrace, or rely upon the OSHA investigation which is plainly outside the Complaint. Defendant's exhibits are simply not central to Plaintiff's claims and are matters outside the Complaint that should not be considered on a motion to dismiss without converting the motion into one for summary

---

[2] Plaintiff also attached Exhibit 1, a copy of Plaintiff's copyright record registration and Exhibit 4, a copy of a letter between counsels concerning the dismissal of Plaintiff's common law copyright infringement claim. Exhibit 1 (Docket 12-1) is necessarily embraced by Plaintiff's Complaint and thus Plaintiff has no objection to the Court considering Plaintiff's copyright registration. Exhibit 4 (Docket 12-4) should not be considered by the Court because, as discussed *supra*, Plaintiff informed Defendant he would voluntarily dismiss Count III of his Complaint, and therefore concedes Count III of his Complaint should be dismissed without prejudice. Accordingly, Plaintiff would ask the Court not to consider Exhibit 4.

judgment. Fed. R. Civ. P. 12(d). Thus, Plaintiff respectfully requests the Court exclude Defendant's Exhibits 2 and 3 (Dockets 12-2 and 12-3), and not consider such extraneous materials or the arguments accompanying them at this motion to dismiss stage.

**B.    If the Court Does Not Exclude Defendant's Documents, the Motion to Dismiss Must Be Converted to a Motion for Summary Judgment. Defendant's Motion for Summary Judgment Must Be Denied, because the Motion Is Both Procedurally Improper and Premature.**

By citing to numerous matters outside of Plaintiff's Complaint, the Defendant has placed the Court in such a position that if the Court does not exclude the matters it must convert Defendant's motion into a motion for summary judgment. Rule 12(d) of the Federal Rules of Civil Procedure provides that if a court is presented and does not exclude matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). This procedure is mandatory. *See* 5B Wright & Miller, *Federal Practice & Procedure* § 1356 (noting that the language of Rule 12(d) is mandatory). Upon conversion to a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 800 (8th Cir. 2011). Defendant's motion, if converted to a motion for summary judgment, must be denied because the motion is both procedurally improper and premature.

First, Defendant's motion is procedurally improper. Defendant is required by the Federal Rules and Local Rules to support a motion for summary judgment with a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. *See* Fed. R. Civ. P. 56; D.S.D. LR 56.1(A). Each material fact in the required statement must be presented in a separate numbered statement and with appropriate citation to the record in the case. *See* D.S.D. LR 56.1(A). The requirement that a statement of undisputed

material facts be attached to the motion by the party moving for summary judgment is phrased with the mandatory term "must." *Id.* Plaintiff is then afforded an opportunity to contest those facts and assert additional material facts of his own. D.S.D. LR 56.1(B). Defendant has not submitted a statement of undisputed facts, however, and its failure to do so mandate the denial of its motion for summary judgment. Upon proper presentation of a motion for summary judgment, Plaintiff would also have the opportunity to request additional time for discovery, which opportunity Plaintiff would undoubtedly exercise. Fed. R. Civ. P. 56(d).

Second, in addition to being procedurally improper, Defendant's motion for summary judgment is premature. Summary judgment is proper only after the non-movant has had an opportunity to conduct discovery. *See Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1999). This is because a court's inquiry on a motion under Rule 12(b)(6) is limited to the content of the complaint, whereas a motion for summary judgment often involves the use of pleadings, depositions, answers to interrogatories, and affidavits. *See* Wright & Miller, *5B Federal Practice & Procedure* § 1356. In this case, discovery has yet to begin as the Defendant filed its motion prior to filing an answer.

Here, summary judgment is premature, because all of Plaintiff's claims and presumably all of Defendant's defenses to them, if any, are fact-intensive. By way of example, Plaintiff alleges in Count I of his Complaint that Defendant engaged in copyright infringement by, among other things, using a cellphone to record Plaintiff's YouTube videos without Plaintiff's authorization. *See* Docket 1 at ¶¶ 17, 22-35. Copyright infringement and the defense of fair use is a mixed question of law and fact. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985).  At this early stage of litigation, no discovery has taken place such that factual issues presented in this lawsuit have not yet been explored. Without such discovery, neither party

can demonstrate the absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. And because discovery has not yet begun, Plaintiff would need additional time under Federal Rule of Civil Procedure 56(d) to conduct discovery on all of his claims based on the numerous factual issues presented in this lawsuit that, at this early stage of litigation, have not been explored. Granting summary judgment without giving Plaintiff the opportunity to conduct discovery and present evidence is not appropriate. Accordingly, Defendant's motion for summary judgment prior to discovery is premature, particularly when its purported "fair use" defense relies upon self-serving explanations for its illegal conduct, which explanations Plaintiff is entitled to challenge through discovery. For example, Defendant asserts its infringement of Plaintiff's copyrights was justified, but Plaintiff asserts Defendant's proffered reasons are pre-textual and disingenuous. Plaintiff disputes Defendant's reason for infringing his copyrights and the genuineness of its alleged fair use, which must be explored through discovery.

Thus, Defendant's motion, if converted to a motion for summary judgment, is procedurally improper as it fails to adhere to the requirements under the Federal Rules of Civil Procedure and this Court's Local Rules. Defendant's motion is also premature, as discovery has yet to begin and there remain genuine issues of material fact. If the Court converts Defendant's motion to one for summary judgment, Plaintiff respectfully requests the motion be denied.

## II.     Defendant's Motion to Dismiss Must Be Denied on the Merits.

If the Court does not convert Defendant's motion to a motion for summary judgment, Defendant's motion must still be denied on the merits. Plaintiff's Complaint contains sufficient factual content that, accepted as true, states claims to relief that are plausible on their face.

### A.    Plaintiff's Copyright Registration Is Valid.

First, Defendant argues that Count I of Plaintiff's Complaint should be dismissed for lack of a valid copyright registration. *See* Docket 11 at 4-7. Defendant argues that Plaintiff improperly registered his YouTube videos as "unpublished" works and that instead, because Plaintiff's videos were posted on YouTube, the videos are "published." *See id.* However, Plaintiff's copyright registration is valid. Further, Defendant's argument ignores the Copyright Act and United States Supreme Court authority contrary to its position.

Here, as alleged in his Complaint, Plaintiff properly registered his copyright for his two YouTube videos with the United States Copyright Office and received his federal registration, registration number PAu004055591. *See* Docket 1 at ¶ 24. As noted by Defendant, this Court "owes deference to the Copyright Office." *Asche & Spencer Music, Inc. v. Principato-Young Entm't Inc.*, 147 F. Supp. 3d 833, 836-37 (D. Minn. 2015) (internal citations omitted). Indeed, the United States Copyright Office itself has stated that "[w]here the applicant seeks registration as an unpublished work and provides the Office with a statement of facts which clearly show that publication has occurred, the Office will not register a claim to copyright in the work as unpublished." United States Copyright Office, *Compendium of Office Practices III* § 904(5). Plaintiff properly provided information to the United States Copyright Office, and the Office registered Plaintiff's claim to copyright in his works as "unpublished." Plaintiff's Complaint sufficiently presents factual content that allows the Court to draw the reasonable inference that Plaintiff has a valid copyright in his two YouTube videos. *See Iqbal*, 556 U.S. at 678.

Nonetheless, Defendant improperly suggests that Plaintiff's videos are "published" works. *See* Docket 11 at 5-7. The use of YouTube or other streaming platforms to transmit or stream a video is a *performance* and not a *publication* of a work. *See Am. Broad. Co., Inc. v.*

10

*Aero, Inc.*, 573 U.S. 431, 442-44 (2014) (transmitting or streaming videos online is performance of a work). Defendant attempts to equate the public performance of Plaintiff's videos on YouTube as the videos being "published" to invalidate Plaintiff's valid copyright registration. *See* Docket 11 at 6-7. Plaintiff's copyrighted works were performed via streaming transmission on YouTube, but the videos have never been "published" as the term is defined in the Copyright Act. The United States Copyright Office adheres to Congress's definition of "publication" provided at § 101 of the Copyright Act, which defines "publication" as "the distribution of copies . . . of a work to the public *by sale or other transfer of ownership*, or by rental, lease, or lending . . . A public performance or display of a work *does not of itself* constitute publication." 17 U.S.C. § 101. Thus, the critical aspect of "publication" is that the owner of the copyright authorizes the distribution of copies of the work by sale or transferring ownership. *See id.* The fact that someone in the public may, without the authority of the copyright owner, view, reproduce or distribute the work, does not affect the determination, for public performance of a work does not itself constitute publication. *Id.*

Plaintiff's YouTube videos, although publicly performed, were not "published" as defined in the Copyright Act. *See id.* Plaintiff did not distribute copies of his videos by sale or other transfer of ownership, and the fact that the videos were publicly performed does not constitute that the videos were "published" work. Plaintiff provided information to the Copyright Office that in turn issued a valid, federal copyright registration for his work as "unpublished." Plaintiff has a valid copyright registration, and his Complaint pleads factual content that allows the Court to draw such an inference. *See* Docket 1 at ¶ 24; *Iqbal*, 556 U.S. at 678. Thus, Plaintiff respectfully requests the Court deny Defendant's motion to dismiss on this issue.

**B.    Count I of Plaintiff's Complaint Sufficiently States a Claim for Copyright Act Infringement.**

Defendant next argues that Count I of Plaintiff's Complaint should be dismissed for failure to state a claim of copyright infringement. *See* Docket 11 at 7-14. Defendant argues that Plaintiff's infringement claim should be denied on the defense of fair use. *See id.* Defendant, as discussed above, bases this defense on extraneous documents not attached to or necessarily embraced by Plaintiff's Complaint. *See id.* Defendant argues that the defense of fair use applies because Defendant used Plaintiff's copyrighted work to "document and preserve evidence" in response to an OSHA claim filed by Plaintiff on July 22, 2020. *See id.*

First, for the reasons outlined above, the Court should not consider Defendant's Exhibits 2 and 3 (Dockets 12-2 and 12-3), and the accompanying arguments. Neither of these exhibits is attached to or necessarily embraced by the pleadings, for the allegations in Plaintiff's Complaint concern the infringement and circumvention of Plaintiff's copyright, not the OSHA investigation that followed Plaintiff's termination of employment. *See* Docket 1.[3] The Complaint alleges copyright infringement occurring on July 11, 2020, which is before the activities alleged to be the basis for Defendant's fair use defense occurring weeks later. Defendant's exhibits are not central to Plaintiff's claims, and are matters outside the Complaint that should not be considered at this stage on a motion to dismiss. Thus, the Court should not consider Defendant's defense of fair use and its arguments within section III of its brief (Docket 11 at 7-14).

Here, Plaintiff's Complaint contains sufficient factual matter, accepted as true, that properly states a claim for copyright infringement under the Copyright Act. *See Iqbal*, 556 U.S.

---

[3] Discovery may reveal infringement and DMCA violations occurring after the July 11, 2020, events. Despite the chance of discovering additional infringement and DMCA violations through discovery, the OSHA investigative documents relied upon by Defendant in support of its motion are plainly outside of and not embraced by the Complaint.

12

at 678. The Copyright Act "seeks to protect 'original works of authorship fixed in any tangible medium of expression, by granting to the author certain exclusive rights[.]" *United Tel. Co. v. Johnson Publ'g Co.*, 855 F.2d 604, 607 (8th Cir. 1988). A copyright also grants to the owner the exclusive rights to reproduce the copyrighted work and to distribute copies. *Olan Mills v. Linn Photo*, 23 F.3d 1345, 1347(8th Cir. 1994). The Act defines infringement as a violation of "the exclusive rights of the copyright owner." 17 U.S.C. § 501(a). "A claim for copyright infringement involves two elements: (1) ownership and validity of the copyright, and (2) potential violation of the copyright owner's exclusive rights by, for example, unauthorized reproduction and distribution of the copyrighted work." *Pinkham v. Sara Lee Corp.*, 983 F.2d 842, 830 (8th Cir. 1992); *see also Mulcahy v. Cheetah Learning, LLC*, 386 F.3d 849, 852 (8th Cir. 2004); *see also United Tel. Co.*, 855 F.2d at 607 (noting that "the plaintiff must prove: (1) ownership of the copyright; and (2) copying of protectable expression by the defendant.").

Plaintiff's Complaint alleges both (1) ownership and validity of the copyright and (2) Defendant's unauthorized use of Plaintiff's copyrighted work. *See* Docket 1 at ¶¶ 12-34. The Complaint provides factual content alleging the manner in which Plaintiff believes Defendant violated his copyrights and the unauthorized nature of Defendant's use. The Complaint sufficiently gives Defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Thus, on a motion to dismiss, Plaintiff's Complaint contains sufficient factual matter that states a plausible claim for copyright infringement.

However, even if the Court considers Defendant's exhibits and arguments extraneous to the Complaint, Defendant's motion still fails. While Plaintiff does not contest that the use of copyrighted work in a judicial proceeding may qualify as fair use in certain circumstances, such use does not form the basis for Plaintiff's infringement claim in Count I of his Complaint. *See*

Docket 1. Rather, Plaintiff alleges that on or about July 11, 2020, Defendant copied Plaintiff's two YouTube videos without his authorization, and used said videos outside of a judicial proceeding. *Id.* at ¶¶ 12-34. Plaintiff's Complaint alleges that Defendant infringed upon his copyrights before terminating his employment on July 11, 2020, and thus before any OSHA claim was made by Plaintiff weeks later on July 22, 2020. *Id.* Further, Plaintiff's Complaint alleges such copyright infringement occurring before any lawsuit was on Defendant's horizon, including this lawsuit filed nearly six months after Defendant's infringement. *See id.* If Defendant engaged in additional acts of infringement after commencement of litigation, it is liable for such acts occurring outside of this judicial proceeding, because pending litigation is not a free pass to infringe with impunity outside of litigation. Rather, it is only the use of copyrighted material in a judicial proceeding (*e.g.*, submitting a copyrighted work as an exhibit to an affidavit) that potentially enjoys a fair use defense. Count I of Plaintiff's Complaint does not include an infringement claim for Defendant retaining or using the unauthorized copies of Plaintiff's videos within a judicial proceeding.

Additionally, the cases cited by Defendant are wholly different than the facts as alleged in Plaintiff's Complaint. Defendant's cited cases all concern the use of copyrighted material *in and during* litigation as opposed to infringement prior to any proceedings or lawsuit. *See* Docket 11 at 10-11. For example, *Jartech, Inc. v. Clancy* concerns the use of copied motions pictures *in and during* a city abatement proceeding. 666 F.2d 403, 406-07 (9th Cir. 1982). *Bond v. Blum* concerns the use of a copyrighted manuscript *introduced as evidence in and during* a state court child-custody proceeding. 317 F.3d 385, 395 (4th Cir. 2003) *abrogated by Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016). *Hollander v. Steinberg* concerns the defendant's use of essays *within two judicial proceedings*. 419 Fed. App'x 44, 47 (2d Cir. 2011). *Healthcare*

*Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, concerns a law firm's copying of a web page *during* litigation. 497 F. Supp. 2d 627, 636-37 (E.D. Pa. 20007). And the House of Representatives Report cited by Defendant explicitly discusses the fair use of copyrighted work used "*in* legislative or judicial proceedings or reports." H.R. Rep. No. 94-1476 (1976) (emphasis added). Thus, unlike Defendant's argument, the cited cases do not support whether copyright infringement before or in anticipation of judicial proceedings is fair use, but rather concern the use of copyrighted work within and during proceedings. Accordingly, the cases cited by Defendant are inapplicable to the allegations of Plaintiff's Complaint.[4]

Although the issue of fair use in judicial proceedings remains undecided in the Eighth Circuit, there are other district courts that have distinguished Defendant's cited cases based on allegations similar to those in Plaintiff's Complaint. For example, in *Peteski Prods., Inc. v. Rothman*, the district court considered a similar fair use argument of the defendant that her copyright infringement was for the purpose of potentially needing evidence in a future lawsuit. 264 F. Supp. 3d 731, 740 (E.D. Tex. 2017). Rothman worked on the Dr. Phil (McGraw) television show and anticipated making employment law claims against Dr. McGraw and Peteski Productions (the employer). "Rothman attempted to document a 'bona fide example of Dr. McGraw's conduct for her lawsuit' by recording, using her iPhone, a nine-second clip of … unaired footage from [the] television show." *Id*. at 733. Rothman filed a motion to dismiss Peteski Productions' copyright infringement claim, and the district court converted it into a summary judgment motion, as Rothman's fair use defense relied on evidence outside of the complaint. *Id*. The court denied summary judgment and distinguished copyright infringement of

---

[4] Additionally, the majority of Defendant's cited cases were decided at the summary judgment stage or an appeal from a summary judgment determination or jury verdict. The majority of cited cases did not decide the defense of fair use at the motion to dismiss stage.

"using a work *in* a judicial proceeding" as fair use compared to infringement that occurred in advance or in preparation for any such future judicial proceedings. *Id.* at 740 (emphasis added). The court reasoned that Rothman reproduced the copyrighted work "solely because [she] thought [she] might need a bona fide example of Dr. McGraw's conduct for [her] lawsuit." *Id.* (alterations in original). The court found that such infringement did not occur within a judicial proceeding, and fair use did not apply despite Rothman's "eventual use of the work to prepare for a potential lawsuit against" the copyright owner. *Id.*

Like Rothman, Defendant also used a mobile phone to screen capture and record a video allegedly to preserve evidence for an anticipated judicial or legal proceeding. Defendant did not copy Plaintiff's works during or in response to such judicial proceedings, but rather infringed upon Plaintiff's copyrights because Defendant thought it might need a bona fide example of Plaintiff's conduct in the future. Such infringement, therefore, does not constitute fair use within a judicial proceeding. *See Peteski Prods. v. Rothman*, 264 F. Supp. 3d at 740.

Finally, Plaintiff factually disputes Defendant's alleged purpose of infringement, and because no discovery has been completed in the case, such facts remain genuinely disputed. Defendant's defense of "fair use is a mixed question of law and fact, which means that it may be resolved on summary judgment if a reasonable trier of fact could reach only one conclusion—but not otherwise." *Ty, Inc. v. Publ'ns Int'l Ltd.*, 292 F.3d 512, 516-17 (7th Cir. 2002) (citing *Harper & Row Publishers, Inc.*, 471 U.S. at 560); *see also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (noting that the purpose and character of infringing use, and other factors under the fair use standard, must be examined on a "case-by-case analysis" and not "simplified with bright-line rules").

16

After repeatedly advocating for a safe work environment—which is a protected activity under OSHA—Defendant ignored and ostracized Plaintiff and ultimately fired him in retaliation for such advocacy. Defendant mischaracterizes Plaintiff's YouTube videos as making threats against Defendant and its management. In reality, Plaintiff was sitting at home commenting on his frustrations with the health risks created by Defendant's pandemic policies. For example, in response to a pandemic email from Defendant's management, at approximately the 1:30 mark of the first video, Plaintiff stated:

> This guy [the author of the pandemic email] should go under the guillotine. That's what he's doing to the people under him. Correct me if I'm wrong, but he's putting the guillotine to them. I want to reverse it. I would gladly let the rope go, because you don't know the number of fucking people you are affecting in your lack of… [Plaintiff visibly choked up] I'm going to move on, oh my God.

Plaintiff's metaphorical comments are not threatening as suggested by Defendant. Rather, they are expressions of frustration comparing Defendant's failure to follow reasonable pandemic protocols to putting Plaintiff's fellow co-workers under the guillotine. There is no reason to believe either Plaintiff or Defendant have a literal guillotine. This is one of many examples of Defendant cherry-picking, exaggerating, and decontextualizing Plaintiff's actual comments.

Later (around 13:40), Plaintiff reads from the pandemic email where Defendant's management wrote, "I hope in these times, this finds you well" and comments as follows:

> If I hear these words one more time, "I hope this message finds you well or I hope in these times this finds you well" … I want to put his teeth right through the back of his fucking head, because, here's the deal, it's not finding a lot of people, a lot of people under your watch, well. Not even remotely close to well. You fucking dipshit. You could have prevented this.

Defendant did not genuinely find any of Plaintiff's comments threatening. Rather, Defendant was embarrassed by being called out publicly for its tone-deaf, insensitive response to the pandemic which placed workers in jeopardy. Defendant and its management were called stupid,

dipshits, and jokers for endangering Plaintiff and his coworkers by ignoring COVID-19 precautions, but Plaintiff made no actual threats of violence. (*E.g.*, "Jokers, uninformed, dipshits…how they can be in a leadership role is f'ing beyond me" (4:36 mark of second video).) Defendant was embarrassed and ashamed, but not genuinely fearful for its safety.

To "paper up" its unjustified termination of Plaintiff's employment, Defendant had the sheriff serve a letter on company letterhead instructing Plaintiff not to come to its business. Despite Defendant's arguments to the contrary (including in its brief), what was served by the sheriff was a letter written by Defendant, not a "no trespass order." Defendant asserts it reported its concerns to law enforcement, but the authorities have neither brought charges nor even contacted Plaintiff about Defendant's alleged concerns.

As set forth above, Plaintiff disputes Defendant's characterizations of his YouTube videos as well as Defendant's supposed purpose and use of his copyrighted work. Plaintiff asserts that Defendant copied his videos without his authorization, because it was upset with Plaintiff for airing Defendant's lack of COVID precautions, not because Defendant knew at that very moment that it may need such videos in response to an OSHA complaint that had neither been filed nor threatened, or for some other legal proceeding. As alleged in his Complaint, Plaintiff asserts Defendant used the unauthorized copies of the videos outside of a judicial proceeding, including infringement before any OSHA investigation or lawsuit.

Accordingly, due to the fact-sensitive nature of the inquiry, courts generally do not address the defense of fair use until the summary judgment stage, because the resolution of the defense often requires consideration of facts outside of the complaint. *See, e.g.*, *Hirsch v. CBA Broad., Inc.*, 2017 WL 3393845, at *7 (S.D.N.Y. Aug. 4, 2017); *Cariou v. Prince*, 714 F.3d 694, 704 (2d Cir. 2013). As noted in *Graham v. Prince*, "[b]ecause the affirmative defense of fair use

requires the Court to engage in a fact-sensitive inquiry that cannot be completed . . . on a motion to dismiss the complaint," a defendant's motion to dismiss may be denied. 265 F. Supp. 3d 366, 371 (S.D.N.Y. 2017); *see also Browne v. McCain*, 612 F. Supp. 2d 1125, 1130 (C.D. Cal. 2009) ("[I]n light of a court's narrow inquiry at [the motion to dismiss] stage and limited access to all potentially relevant and material facts needed to undertake the [fair use] analysis, courts rarely analyze fair use on a [Rule] 12(b)(6) motion."); *Wright v. Warner Books, Inc.*, 953 F.2d 731, 735 (2d Cir. 1991)("the fact-driven nature of the fair use determination suggests that a district court should be cautious in granting *Rule 56 motions* in this area.") (emphasis added). "[T]he use of copyrighted material in judicial proceedings is not *inherently* fair use," and a more fact-sensitive inquiry must be completed. *Shell v. Devries*, 2007 WL 324592, at *3 (D. Colo. Jan. 31, 2008). Thus, even if the Court considers the extraneous documents supplied by Defendant and its defense of fair use argument in section III of its brief, there remains a genuine dispute of material fact regarding both the purpose and use of Defendant's infringement. Because no discovery has been conducted on such issues, any such dismissal of Plaintiff's Complaint based on Defendant's defense of fair use is premature.

Thus, based on the statutory language of the Copyright Act, recent case law, and the undeveloped factual record, at this stage of the proceedings, Count I of Plaintiff's Complaint sufficiently alleges a claim for copyright infringement such that Defendant's motion to dismiss (Docket 10) should be denied.

### C.    Plaintiff's Complaint Sufficiently States a Claim for Statutory Damages and Attorney Fees.

Next, Defendant argues that Plaintiff fails to state a claim for statutory damages and attorney fees. *See* Docket 11 at 14-15. Plaintiff concedes his claim for statutory damages and attorney fees under § 504 and § 505 of the Copyright Act, based on the exception incorporated

by § 412, do not state a plausible claim for relief and should be dismissed as to infringement occurring before December 16, 2020, the effective date of registration. However, Plaintiff alleged the following: "After illegally recording the Videos, Defendant made additional copies, distributed additional copies, and otherwise used, copied, reproduced, performed (by playing), and viewed the Videos without Edland's authorization and in violation of Edland's rights." Docket 1, ¶ 21. For acts of infringement occurring after December 16, 2020, Plaintiff has pleaded a valid claim for statutory damages and attorney's fees. Relatedly, even if statutory damages and attorney's fees are unavailable for pre-December 16, 2020, acts of infringement under the Copyright Act, Plaintiff has pleaded a valid claim for other relief, including damages. *See* Docket 1 ¶ 35.

Additionally, Plaintiff has not exclusively claimed damages for its copyright infringement claims under §§ 404 and 405. Plaintiff has also moved for statutory damages under the DMCA, which Defendant does not dispute in its motion, and for damages, attorney fees, costs, and any other legal, equitable, statutory, or other remedies allowed, which Defendant also does not dispute. *See* Dockets 1, 11. In certain cases, a court may award reasonable attorney fees to the prevailing party. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 716 F.3d 1020, 1027 (8th Cir. 2013); *First Nat'l Bank in Sioux Falls v. First Nat'l Bank S.D.*, 679 F.3d 763, 771 (8th Cir. 2012). Where the court finds that a defendant's conduct was willful and deliberate, a court may well determine that it is the type of case for which an award of attorney's fees is appropriate. *First Nat'l Bank*, 679 F.3d at 771. Here, Plaintiff's Complaint alleges that Defendant's actions were committed willfully. *See* Docket 1 at ¶ 34. Thus, at this stage, Plaintiff's Complaint sufficiently states a claim for damages under the DMCA and for various

other damages including an award of attorney fees if the Court were to find such an award appropriate.

### D. Count II of Plaintiff's Complaint Sufficiently States a Claim for Circumvention Under the Digital Millennium Copyright Act.

Defendant next argues that Count II of Plaintiff's Complaint should be dismissed for failure to state a claim for circumvention under the DMCA. *See* Docket 11 at 16-18. Defendant argues that using a cellphone to record a YouTube video does not constitute circumvention under the DMCA, because Plaintiff's YouTube videos are public. *Id.* Because Defendant has public access to view Plaintiff' work, Defendant argues there was no circumvention. *Id.* However, Plaintiff's Complaint states a valid claim under the DMCA.

Congress recognized the importance of preventing individuals from circumventing technological measures when it enacted the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.* ("DMCA"). Section 1201 of the DMCA prohibits "circumvent[ing] a technological measure that effectively controls access to" copyrighted works. 17 U.S.C. § 1201(a)(1)(A); *see also Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 440–41 (2d Cir. 2001) (describing the DMCA's purpose and anti-circumvention provisions). Section 1201 specifically defines what it means "to circumvent" an access-control technological measure as: ". . . to descramble a scrambled work, to decrypt an encrypted work, *or otherwise to avoid, bypass, remove,* deactivate, or impair *a technological measure, without the authority of the copyright owner.*" 17 U.S.C. § 1201(a)(3)(A) (emphasis added).

When copyright owners authorize services like YouTube to stream their content, the copyright owner requires those services to employ technological protection measures (TPMs) that safeguard against unauthorized access to and copyright of their works. YouTube, in turn, employs TPMs to prohibit users of its site from circumventing such technology to make copies

of protected, copyrighted work. *See, e.g.*, YouTube's Terms of Service, Permissions and Restrictions ¶ 2, https://www.youtube.com/static?template=terms (last visited Mar. 19, 2021). YouTube's TPMs and Terms of Service specifically does not allow users to "circumvent . . . any part of the Service . . . including . . . features that . . . prevent or restrict the copying or other use of Content[.]" *Id.* YouTube's Terms of Service also forbids users from screen-capturing, recording, downloading, or otherwise copying videos posted on YouTube. *Id.* This is because the harm from the copying and dissemination of digital copies of sound recordings and other copyrighted works is well-known and has been confirmed repeatedly in the case law. *See, e.g.*, *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 928–29 (2005) ("[D]igital distribution of copyrighted material threatens copyright holders as never before, because every copy is identical to the original, copying is easy, and many people (especially the young) use file-sharing software to download copyrighted works.").

Here, Count II of Plaintiff's Complaint properly states a valid DMCA circumvention claim at this stage of the proceedings. Plaintiff alleges that Defendant, through the use of a cellphone, circumvented YouTube's technological measures that control permanent access to his YouTube videos. *See* Docket 1 at ¶¶ 36-42. Plaintiff alleges that the Defendant's circumvented such technological measures without his permission or authorization and thereafter distributed, reproduced, transferred, performed, and replayed Plaintiff's copyrighted work without his authorization. *See id.* Plaintiff's Complaint alleges that each discrete act, from the unauthorized circumvention of YouTube's TPMs, as well as the subsequent distributions, reproductions, transfers, performance, and replaying of his copyrighted work is a violation of the DMCA. *See id.* Such allegations sufficiently allege that Defendant "circumvent[ed] a technological measure

. . . without the authority of the copyright owner" in violation of the DMCA. 17 U.S.C.
§ 1201(a)(3)(A).

Although Plaintiff's YouTube videos were available for public view on July 11, 2020, the videos were not available for permanent download due to YouTube's TPMs. Defendant's use of a cellphone to rip or copy the videos therefore circumvented and bypassed YouTube's TPMs. *See* 17 U.S.C. § 1201(a)(3)(A). This is no different than circumvention of copyrighted work by using a camcorder or cellphone to record a movie in a movie theatre. As there are no heightened pleading requirements for a DMCA circumvention claim, Plaintiff only needs to allege facts that, accepted as true, "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. Plaintiff's Complaint does so, and contains sufficient factual content to support a plausible claim that Defendant circumvented a technological measure without Plaintiff's authority in violation of the DMCA. *See id.*

Defendant cites several cases in which courts found a violation of the DMCA for decrypting, unscrambling, or bypassing certain TPMs implemented to prevent access to copyrighted works. *See* Docket 11 at 17. The fact that some cases involve decryption and unscrambling to obtain unauthorized access does not preclude other types of circumvention claims. As previously discussed, although people are able to view videos on YouTube, they are not allowed to make permanent downloads due to YouTube's TPMs and related Terms of Service. Defendant circumvented, or "got around" YouTube's TPMs by using a cellphone to record Plaintiff's videos. Defendant's assertion that it does not "circumvent" a TPM because it used a cellphone to bypass the TPMs does not mean its actions were not "circumvention." Technology does not have to crack or decode a TPM to circumvent it. *See RealNetworks Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913, 935-36 (N.D. Cal. 2009) (rejecting as "legal

legerdemain" the argument that defendant did not circumvent a technological measure because it did not "remove" a layer of "CSS protection"). And the fact that public users can view Plaintiff's YouTube videos while posted is irrelevant—the public does so with the authority of the copyright owner and has not circumvented TPMs in violation of the DMCA. Defendant circumvented YouTube's TPMs and retained permanent copies of Plaintiff's copyrighted work after his work was removed from the public platform. Such allegations state a violation of the statutory language of the DMCA that is plausible on its face. *See* 17 U.S.C. § 1201(a)(3)(A); *Iqbal*, 556 U.S. at 678.

Similar allegations of circumvention of YouTube's TPMs currently form the basis of other current DMCA lawsuits in district courts. For example, in *Yout LLC v. RIAA*, No. 3:20-CIV-01602-SRU (D. Ct. Jan. 14, 2021), the Recording Industry Association of America, Inc. ("RIAA") controls the copyright to the majority of popular sound recordings. RIAA members authorize YouTube to stream their copyrighted work. In return, YouTube protects the copyrighted sounds from unauthorized access and copying. Yout LLC, on the other hand, operates an unauthorized stream-ripping service available at yout.com by which users are able to turn authorized public streams of sound recordings on YouTube into unauthorized, permanent downloads of the work without having to revisit YouTube and listen to the sound. Defendant's circumvention here is no different than the circumvention in *Yout*, where users are able to turn authorized streams of public YouTube videos into unauthorized, permanent downloads. Thus, just as RIAA argues there is a valid factual and legal basis for its position against Yout's circumvention of YouTube's TPMs, so too is there a valid basis for Plaintiff's claims against Defendant at this motion to dismiss stage.

Finally, if Defendant's position was correct, then only sophisticated means of circumvention would amount to a violation of the DMCA, and the statute would not employ such broad language in its definition of "circumvention." *See* 17 U.S.C. § 1201(a)(1)-(3). Defendant's position would amount to a free pass for any unlawful stream-ripping service like Yout, because the DMCA would not apply to TPMs that can be defeated by publicly available means. This argument misinterprets the law, and courts have rejected the same argument as to the alleged ineffectiveness of YouTube's TPMs. *See RealNetworks, Inc.*, 641 F. Supp. 2d at 932 (rejecting the argument that a TPM was ineffective under section 1201 because it had "already been cracked or hacked" or the means to do so were publically available).

Simply put, Defendant's argument ignores the plain language of "circumvention" under the DMCA. Section 1201 provides that an individual, like Defendant, "circumvent[s] a technological measure" if it bypasses or avoids that measure "without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A). Defendant has not alleged (nor could it) that Defendant had the authority of Plaintiff to bypass YouTube's TPMs and turn an authorized public stream of Plaintiff's YouTube videos into unauthorized, permanent downloads. Plaintiff removed his videos from YouTube the day the videos were posted, but Defendant retained unauthorized, permanent downloads of such videos by circumventing YouTube's TPMs. Defendant simply would not have gained permanent access to Plaintiff's copyrighted work had it not circumvented YouTube's TPMs. Defendant's unauthorized, permanent download of Plaintiff's videoes through circumvention of YouTube's TPMs is a sufficient factual basis for Count II of Plaintiff's Complaint. At this motion to dismiss stage, Plaintiff has sufficiently alleged a valid DMCA circumvention claim against Defendant. *See Iqbal*, 556 U.S. at 678.

Thus, based on the statutory language of the DMCA, recent case law, and the current undeveloped factual record, at this stage of the proceedings, Count II of Plaintiff's Complaint sufficiently alleges a violation of the DMCA such that Defendant's motion to dismiss (Docket 10) should be denied.

### E.    Count III of Plaintiff's Complaint Should Be Dismissed without Prejudice.

Defendant argues that Count III of Plaintiff's Complaint is preempted by the Copyright Act. Docket 11 at 19-20. As previously discussed, Plaintiff informed Defendant that he would dismiss Count III of the Complaint without prejudice in order to preserve Plaintiff's rights. Plaintiff's counsel offered to either amend the Complaint or file a Rule 41 voluntary dismissal of the Common Law Copyright Claim, but continued not to hear back from Defendant's counsel until the filing of Defendant's motion to dismiss (Docket 10). Because Plaintiff has filed this motion to dismiss (or construed more properly as motion for summary judgment given the references to information outside of the Complaint), Plaintiff can no longer voluntarily dismiss Count III of his Complaint under Federal Rule of Civil Procedure 41(a)(1)(A)(i). Accordingly, Plaintiff respectfully requests the Court dismiss Count III of his Complaint without prejudice.

### F.    Defendant Should Not Be Awarded Attorney Fees.

Finally, Defendant argues that if the Court grants its motion to dismiss with respect to Count I of Plaintiff's Complaint, it should be awarded attorney fees. *See* Docket 11 at 21-22. For the reasons discussed at length above, regardless of whether the Court construes Defendant's motion as a motion for dismissal or summary judgment, Defendant's motion as to Count I of Plaintiff's Complaint should be denied. Plaintiff's Complaint presents sufficient factual content to support his claim for copyright infringement. *See Iqbal*, 556 U.S. at 678. And if converted to a motion for summary judgment, such a motion is both procedurally improper and premature as no

discovery has taken place. There remain genuine issues of material fact on Count I of Plaintiff's Complaint such that Defendant's motion should be denied. Thus, because Defendant's motion should be denied, Defendant should not be awarded attorney fees.

## CONCLUSION

The Court should reject Defendant's attempt to rely on extraneous materials in support of its motion to dismiss. Defendant's use of such outside materials involves disputed facts that require discovery at this early stage of the proceedings. If the materials are not rejected, the Court must then treat the motion as one for summary judgment. Because Defendant's motion for summary judgment is both procedurally improper and premature, the Court should deny the motion for summary judgment so that the parties may engage in discovery. Finally, if Defendant's motion is treated as one for dismissal, the motion is still properly denied on its merits. At this early stage, Count I and II of Plaintiff's Complaint contains sufficient factual matter that, accepted as true, states plausible claims for relief. Thus, for each and all of these reasons, Plaintiff respectfully requests this Court deny Defendant's motion.

Dated at Sioux Falls, South Dakota, this 23rd day of March, 2021.

> DAVENPORT, EVANS, HURWITZ &
> SMITH, L.L.P.
>
> _____
> Mitchell Peterson
> 206 West 14th Street
> PO Box 1030
> Sioux Falls, SD 57101-1030
> Telephone: (605) 336-2880
> Facsimile: (605) 335-3639
> *Attorneys for Plaintiff*

## <u>CERTIFICATE OF BRIEF LENGTH / WORD COUNT</u>

I certify that this brief is 8,480 words using the word count feature of Microsoft Word 2016, which is under the 12,000-word limit of LR 7.1B.1.

_____
Mitchell Peterson